HENNA ET AL., PLAINTIFFS AND APPELLANTS, *v.* SAURÍ & SUBIRÁ, DEFENDANTS AND RESPONDENTS.

APPEAL from the District Court of Ponce in Foreclosure Proceedings.

No. 1180.—Decided July 20, 1915.

CONTRACTS—PUBLIC INSTRUMENT—EXPRESS CONDITION—BARGAIN AND SALE—MEETING OF MINDS.—For the same reason that if the contracting parties agree that their contract shall not be deemed perfected until it is set forth in a public instrument, such agreement must be respected, so also any other express condition stipulated for the perfection of a contract of bargain and sale must be equally binding, for until such condition is fulfilled it cannot be said that there has been a meeting of minds to give life to the contract and the contract will not be deemed perfected until all and each of the conditions which it contains are considered as satisfied.

ID.—CONDITION OF PRINCIPAL CONTRACT.—When the agreements referred to in section 1222 of the Civil Code are conditions of the principal contract, they have the same legal effect, whether complied with or not, as when the essential obligations of the vendee are broken or fulfilled.

ID.—INTENTION OF PARTIES—PERFECTION OF CONTRACT—CONDITIONS.—When a condition is attached to the intention of the parties with regard to the effectiveness of the contract and to the essential element of its perfection, it is plain that so long as the condition is not complied with the intention is not realized.

FORECLOSURE—CERTIFICATE OF REGISTRAR—INTERESTED PARTIES—SERVICE OF SUMMONS—RETURN.—Subdivision 5 of article 171 of the Regulations for the execution of the Mortgage Law requires that when the certificate of the registrar, which must accompany the complaint, shows the residences of the interested parties, the judge shall order that the summons be served on them; but the

fact that it is not shown that the proper official has complied with the requirements of section 262 of the old Code of Civil Procedure by serving a literal copy thereof, duly signed, setting out the matter to which it refers and stating such facts in the return, is not proof of non-compliance therewith.

ID.—SERVICE OF SUMMONS UPON PARTIES INTERESTED IN SUBSEQUENT LIENS.— OBJECT OF NOTICE.—The object of the service of the summons upon persons interested in the liens recorded after the recording of the rights of the foreclosing creditors is to inform them of the proceeding in order that they may attend the public sale if they so desire.

ID.—VALUATION OF PROPERTY—UPSET PRICE.—When it is not stated in mortgages created before the Mortgage Law of 1893 went into effect that the valuation of the mortgaged property shall serve as the upset price for the public sale to be made in case of foreclosure, it is necessary to exhibit a document expressing the agreement of the debtors to a valuation of the property in case of sale or ask for a judicial appraisement.

ID.—NOTICE OF SALE.—Although article 172 of the Regulations for the execution of the Mortgage Law requires that notices of sale shall be posted in the usual public places of the district where the proceedings are brought and of the place where the property is situated, it does not require that they be posted in the wards in which the properties to be sold are situated.

ID.—NOTICE OF SALE—DESCRIPTION OF PROPERTY.—It is sufficient to state in the notices of sale the names by which the properties are known, the names of their owners, the number of *cuerdas* of land composing them and their value and the place where the title deeds are to be found, without mentioning the boundaries of the properties and the wards in which they are situated.

ID.—NOTICE OF SALE—JUNIOR CREDITORS.—The reason for giving the names of the junior creditors in the notices of sale is to notify them of the foreclosure proceedings when it has not been possible to serve them with the summons, according to subdivision 2 of article 172 of the Regulations for the execution of the Mortgage Law.

ID.—NOTICE OF SALE—ANNULMENT OF SALE—WAIVER.—The failure to publish the notices for the entire time required by law does not necessarily annul the sale inasmuch as this requirement may be waived by the debtor, and in order that a junior creditor may obtain a decree of nullity on that ground it is a general principle of law that he must show that he has been gravely injured.

ID.—JUNIOR MORTGAGEE.—A junior mortgage creditor has no other right in the mortgaged property than that to recover out of the difference between the senior mortgages and the actual and real value of the property.

COSTS AND DISBURSEMENTS—ATTORNEY'S FEES—GUILT OR TEMERITY—DISCRETION OF COURT.—The law empowers the courts to impose discretionally the costs and disbursements of the action upon the defeated party, taking into account his degree of guilt or temerity, and also the attorney's fees in actions in which the amount involved exceeds $500, and unless it is shown that they have abused that discretion their decisions should be sustained.

The facts are stated in the opinion.

*Mr. José A. Poventud* for the appellants.

*Mr. Antonio F. Castro* for the respondents.

MR. JUSTICE ALDREY delivered the opinion of the court.

As a result of successive transactions the firm of Saurí, Subirá & Company became the owners of two mortgages, one of which was created in 1880 and the other in 1885 by the brothers Guillermo and Santiago Oppenheimer Bettini on three properties belonging to them called Consuelo-Vayas, Aguas-Prietas and Isabel, situated in wards of the municipal district of Ponce. On the first two properties the said Oppenheimer brothers created another third mortgage which became the property of Gustavo Cabrera Rosaly.

In the deed of bargain and sale to the property Aguas-Prietas and of voluntary mortgage on the properties Aguas-Prietas and Consuelo-Vayas executed December 15, 1880, by the Oppenheimer brothers, it was set out in the second clause of the deed of sale that the Aguas-Prietas property was sold by its owner, Joaquín P. Valdivieso, for 40,000 *pesos.* The parties stated in the third clause that this sum was a fair and true valuation of the lands and houses sold. In the third clause of the voluntary mortgage the lien was said to be created on the same lands which the Oppenheimer brothers acquired from Joaquín P. Valdivieso and also on the property Consuelo-Vayas, the eighth clause of said mortgage being as follows: "Eighth. That by mutual consent the said property Consuelo-Vayas is valued at 80,000 *pesos* in current money of commerce."

In the deed of April 30, 1885, by which the said Oppenheimer brothers created the second mortgage, the third clause reads: "Value: By mutual consent of the contracting parties and for the purposes of this contract the properties descibed are valued as follows: Consuelo-Vayas, 70,000 *pesos;* Aguas-Prietas, including lands and houses, 40,000 *pesos;* the lands comprising the property Isabel, 12,250 *pesos,* all current money of commerce."

On November 23, 1897, Saurí, Subirá & Company, the owners of the first two mortgages, instituted summary foreclosure proceedings under the Mortgage Law in the Court

of First Instance of Ponce against Santiago Oppenheimer Bettini and the Succession of Guillermo Oppenheimer Bettini composed of the widow and children who were named therein, praying that demand be made upon them for the payment of the amounts secured by the said mortgages within thirty days and that in case of their failure to make said payment the mortgaged property be sold at public auction. From the certificate of the registrar as to encumbrances, accompanying the complaint, it appeared that there was a third mortgage in favor of Gustavo Cabrera Rosaly.

Demand for payment having been made upon the debtors by order of the court and the time allowed therefor having expired without such payment being made, the mortgagee firm moved that the mortgaged properties be sold at public auction and that the court order the appraisement of the properties, inasmuch as no price was stated in case of sale because the mortgage credits were created before the mortgage law then in force had gone into effect and it was necessary that the value of the said properties should be fixed by expert appraisers in conformity with the supplemental provisions of the Code of Civil Procedure, and they designated an appraiser in their behalf. They also moved that the junior creditor, Gustavo Cabrera, be given notice of the status of the proceedings in case he should desire to take part in the sale and appraisement of the properties. On January 1, 1898, the court ordered that, after the appraisement, the mortgaged properties be sold at public auction and that for a period of twenty days notices of the sale should be posted at the usual public places of the city and of the wards in which the properties are situated and be published in the *Gazette* of the island, describing the titles of ownership and setting the day on which the sale should be made. It was ordered also that Gustavo Cabrera be notified of the status of the foreclosure proceedings for the resulting purposes. On the fifteenth day of the same month and year Gustavo Cabrera was notified personally of the status of the case by the court

officials for that purpose and signed the return of the notice with them.

The properties having been appraised, March 18 was set for the sale and it was ordered that the proper notices should be posted and published. Consequently the clerk issued two notices on February 24, 1898, which he posted the same day on the doors of the court and of his office, delivering copies thereof to the mortgagees for publication, setting forth the day set for the public sale of the properties Consuelo-Vayas, Aguas-Prietas and Isabel and the valuation of the lands and stating that the titles of ownership of the properties to be sold were to be seen in the office of the clerk, and that the certificate issued by the registrar of property did not show that any liens on the said properties had been recorded subsequent to those of the foreclosing mortgagees.

The said notice was published in the *Official Gazette* of Porto Rico on March 4, 5 and 6 of 1898.

The proceedings terminated in 1898 with the adjudication of the properties to Saurí, Subirá & Company, who, according to the liquidation made and of which notice was given to Gustavo Cabrera, did not receive the full amount due them. Later an order was entered for the cancellation of the third mortgage in favor of said Cabrera.

Some months before Saurí, Subira & Company began the said foreclosure proceedings, or on May 6, 1897, they entered into a private contract with Santiago Oppenheimer in the following terms:

"This private agreement, which we desire to have the same force and effect as a public instrument, WITNESSETH: That the undersigned, Saurí, Subirá & Company and Santiago Oppenheimer y Bettini, of this city, have agreed and bound themselves as follows: (1) In view of the fact that Saurí, Subirá & Company, assignees of Redfern, Alexander & Company, of London, of a mortgage lien which the latter held on the plantations Aguas-Prietas, Isabel and Consuelo-Vayas of this municipal district, are taking legal proceedings to enforce their rights, the said Oppenheimer, in his character of co-owner of said rural properties, covenants and agrees in the most

solemn manner not to obstruct or oppose the action of said assignees, but, on the contrary, he waives and transfers to them all rights which he now has or may have in the said properties. (2) Saurí, Subirá & Company in turn solemnly promise and bind themselves, in consideration of the said waiver and transfer in their favor by the said Oppenheimer, to pay to him the sum of 4,000 *pesos,* current money, in the following manner: 1,000 *pesos* on the day on which they take possession of all the lands composing the properties Aguas-Prietas, Isabel and Consuelo-Vayas and the balance of 3,000 *pesos* within two years from the date of taking possession of the said properties, no interest of any kind to accrue on the said sums during the said period. (3) During the two years pending the receipt of the 3,000 *pesos,* referred to in the preceding clause, the said Oppenheimer shall have the right to the usufruct of the pasture lands of the said properties which he now holds and on which he has a house, without paying any rent whatever therefor, but under the condition that in case Saurí, Subirá & Company should agree to deliver the said 3,000 *pesos* to the said Oppenheimer before the expiration of the said term of two years, the latter shall be obliged to receive the same and surrender at once the said right of usufruct, the said Oppenheimer vacating the property within a period not exceeding three months from the date of the receipt of the said sum. (4) If for any reason Saurí, Subirá & Company should be unable to pay the said 3,000 *pesos* to the said Oppenheimer within the said period, he allows them an extension of four months, during which time the said sum shall bear interest at 1 per cent monthly, after which extension the said Saurí, Subirá & Company cannot further defer payment of the same for any reason whatever; and to the said end they bind their present and future properties. (5) If the said Oppenheimer should fail to vacate the property within the period and at the time agreed upon, he agrees and consents to his eviction by Saurí, Subirá & Company in the manner most convenient to them, and promises to pay all the judicial and extrajudicial expenses incurred by reason thereof; and to this end he binds his present and future property. (6) This agreement shall begin to have legal force and effect as soon as Saurí, Subirá & Company enter into possession of the said porperties Aguas-Prietas, Isabel and Consuelo-Vayas and has no greater force at present than a memorandum of agreement.

"Under the said conditions we have set forth our agreement, which we bind ourselves to fulfil and keep in all its parts, and sign

the same in duplicate, in Ponce, this sixth day of May, 1897. S. Oppenheimer. Saurí, Subirá & Company.''

The first payment of 1,000 *pesos* was made one year later, or on March 6, 1898.

Another contract, which is substantially the same except that it does not grant a right of usufruct, was entered into on the same date between the said firm and Ana Salomons, widow of Guillermo Oppenheimer, and the first payment was made on June 26, 1898, after the court, on March 28, had given possession of the properties to the mortgagees as a consequence of the adjudication made to them in the foreclosure proceedings, which possession they had not held up to that date.

Some years later, or on August 19, 1912, the Succession of Gustavo Cabrera Rosaly filed a complaint, which was afterwards amended, in the District Court of Ponce against the firm of Saurí & Subirá, successors of Saurí, Subirá & Company, in which, after alleging various defects in the said foreclosure proceedings and that as a consequence of the said private contracts the title of Saurí, Subirá & Company which later served as a basis for the foreclosure proceedings instituted by them to the detriment of plaintiff's predecessor, was extinguished and void, they prayed for judgment in their favor to the effect that the mortgage of Gustavo Cabrera Rosaly was in force; that the defendants be obliged to acknowledge its validity; that the foreclosure proceedings prosecuted by Saurí, Subirá & Company be declared null and void since the filing of the initial petition or, at least, since the demand for payment, and that the court order the proper cancellations to be made in the registry of property, with costs.

An answer to the complaint having been filed, the case went to trial, after which and on June 11, 1914, the lower court rendered and entered judgment dismissing the complaint with costs, disbursements and attorney fees against the plaintiffs.

The party aggrieved by the said judgment appealed therefrom and also. from a subsequent ruling on an objection made to the defendants' memorandum of costs, hereinafter referred to.

The appellants allege that the court committed eight errors in its judgment and relies thereon for its reversal. We will consider them in the order in which they are pleaded.

The first assignment of error reads as follows:

"1. The lower court erred in not finding that there was a confusion of rights which extinguished the mortgage titles of Saurí, Subirá & Company by reason of the instruments executed on May 6, 1897, prior to the institution of the foreclosure proceedings by said mortgagees, Saurí, Subirá & Company, against the co-owners of the mortgaged properties, Santiago Oppenheimer and Ana Salomons, in which the latter bound themselves not to oppose the foreclosure proceedings and assigned their rights in the property about to be foreclosed to the said foreclosing mortgagees."

In support of this assignment of error the appellants contend that by virtue of the private agreements executed by Saurí, Subirá & Company and Santiago Oppenheimer and Ana Salomons, widow of Guillermo Oppenheimer, the title of the former was extinguished because the character of debtor and creditor became merged in the same persons before the foreclosure proceedings were begun and Saurí, Subirá & Company became debtors of the third mortgagee, Gustavo Cabrera, inasmuch as the owners assigned their rights and interests in- the properties to the said firm whereby they either foreclosed the mortgage against themselves as owners or, at least, foreclosed on a mortgage title which was extinguished and without any executory force.

As is seen, this argument rests on the supposition that the said private contracts assigned rights and interests in the ownership of the mortgaged properties and that such assignment took effect from the date of the contracts.

In view of the wording of the said documents we must reach the conclusion that the consideration for the promise

to pay a certain sum of money was the promise by the recipients not to oppose the legal proceedings to be brought to recover on the mortgages, and that although it was agreed also that they waived and transferred to Saurí, Subirá & Company all the interests of Santiago Oppenheimer and Ana Salomons, widow of Guillermo Oppenheimer, in the properties, it was not an actual assignment of real right, as is shown by the stipulation of the sixth clause to the effect that the contract and payment should not take effect until the firm of Saurí, Subirá & Company had been placed in possession of the properties by the court, and the assignment of real rights would not be a good consideration for the contract if the assignment were not to have any effect until the firm became the owner by title of adjudication; for in that case it would be a contract without consideration, and also because if any other person purchased the properties at the judicial sale and paid the claim of the foreclosing firm, the assignment of rights set forth in the private contracts could produce no effect whatever.

Therefore, the true and only consideration for the contracts was, as we said before, the promise not to oppose the foreclosure proceedings, for which reason it cannot be maintained, nor can we hold, that Saurí, Subirá & Company were the owners of the properties mortgaged to them before they brought the foreclosure proceedings, nor, consequently, that rights as owners and as debtors became merged in them, extinguishing their mortgage credit, or that they foreclosed without legal title.

Moreover, there was no binding contract between Saurí, Subirá & Company and the signers of the said document until one year after their execution—that is, on March 21, 1898, when the said firm was placed in possession by virtue of a judicial deed of sale made in part payment of their claims—for, it having been agreed expressly that the contract should have no legal effect until that date and this condition having been agreed upon as the origin or basis of the reciprocal

rights between the parties, the said agreement, which was perfectly valid, had to be respected because, according to section 1222 of the Civil Code, the contracting parties may make the agreement and establish the clauses and conditions which they may deem advisable, provided they are not in contravention of law, morals, or public order. On this point in Volume XXIII, pages 321–323, Scaevola says:

The rule just stated is fundamental and generic; but for the same reason that if the contracting parties agree that their contract shall not be deemed perfected until it is set forth in a public instrument, this agreement must be respected (and this is the doctrine of ancient jurisprudence already laid down in relation to Law VI, Title V, *Partida* 5, and undoubtedly will be that of modern jurisprudence when the case presents itself); so also any other express condition stipulated for the, perfection of the contract of bargain and sale must be binding, for until such condition is fulfilled it cannot be said that there has been a meeting of minds to give life to the contract; and the contract will not be deemed perfected until all and each of the conditions on which it is based are considered as satisfied.

"Article 1255 provides that in all cases of contract the contracting parties may make such agreements and conditions *as they may deem advisable,* provided that they are not contrary to law, morals, or public policy. And such agreements, when they are a condition of the principal contract, have the same legal effect, whether complied with or not, as when the essential obligations of the vendor and vendee referred to in the article under consideration are broken or fulfilled.

 *  *  *  *  *  *  *

"On the other hand, when the volition of the parties with regard to the effectiveness of the contract and, of course, to the essential element of its perfection is incorporated in a condition, it is plain that so long as the condition is not complied with the intention is not realized; and as the volition is the contract within the purest consensual sense, it is clear that there is no contract because the element of consent is not perfected and the perfection of consent is consubstantially the perfection of the contract."

The second error assigned is as follows:

"2. The lower court erred in finding in its statement of the case 'that Gustavo Cabrera y Rosaly, as mortgage creditor posterior to

the foreclosing mortgagees, Saurí, Subirá & Company, was notified personally of the order of the court directing that demand for payment be made upon the debtors and of all the proceedings.' "

We have already stated that Gustavo Cabrera Rosaly, a junior mortgage creditor, was notified personally of the status of the proceedings when, after the expiration of the thirty days allowed the debtors for making payment, the properties were ordered to be appraised and sold at public auction, and although it is said in this assignment that the court found erroneously that Cabrera was served personally with the summons demanding payment, the argument to sustain the assignment is that he was not notified in the manner prescribed by the Code of Civil Procedure then in force and as supplemental to the Mortgage Law and its Regulations.

Subdivision 5 of article 171 of the Regulations for the execution of the Mortgage Law provides that when the certificates of the registrar of property which must accompany the complaint show the addresses of the persons interested in the liabilities which have been recorded subsequently to the right of the petitioner, the judge shall order, at the time demand for payment is issued, that notice thereof be served on said interested persons at the addresses mentioned, if found there; and article 262 of the Law of Civil Procedure then in force, as supplemental to the Mortgage Law, provides that notices shall be served by the clerk, secretary or official of the chamber authorized therefor, who shall read in full the order to the person upon whom service is made, and at the same time shall deliver to him a true copy thereof, signed by the recording clerk, even though said copy should not be demanded, setting out the matter to which it refers, and that a statement of the same must be made in the return. In this case these requirements are not shown by the return to have been complied with, but the fact that it is not so shown is no proof that the requirements were not complied with. Judgment of the Supreme Court of Spain, 79 Jur. Civ., 493.

Again, the judge did not order the service of any kind of notice, but ordered that Gustavo Cabrera should be informed of the status of the proceedings, which order appears to have been complied with. Although the law prescribes that the summons demanding payment shall be served, as the purpose of that provision is that the creditor may have knowledge of the foreclosure proceedings in order that he may attend the public sale should he so desire (*Fernández & Co.* v. *Ramírez,* 8 P. R. R., 94), and as, according to subdivision 2 of article 172 of the said Regulations, the notice announcing the public sale shall also serve to notify the creditors whose interests in the property were recorded or cautionary notice thereof entered subsequently upon whom the notice of demand for payment may not have been served, it is clear that as Gustavo Cabrera was informed prior to the sale of the foreclosure proceedings prosecuted by Saurí, Subirá & Company, the object of the law was fulfilled and he suffered no injury whatever, if it be true that the court officials did not deliver to him a copy of the order of the judge, which has not been proven.

The third ground of error reads as follows:

"The District Court of Ponce erred in concluding in its statement of the case that 'in the two mortgage deeds upon which the said foreclosure proceedings were brought—that is, the deed executed by the Oppenheimer brothers on April 30, 1895, in favor of Rafael León before Notary Joaquín Mayoral and the deed executed December 15, 1880, by the said Oppenheimer brothers before Notary Francisco Parra in favor of Joaquín P. Valdivieso y Hurtado—the mortgagors did not express their agreement to a specific price in case of public sale, for which reason the foreclosing mortgagees in the present suit were obliged to ask for the appraisement of the mortgaged properties, pursuant to the Law of Civil Procedure; and the court erred in not finding the contrary—that is, that the deeds specified a price in case of sale and that the application for expert appraisement in such circumstances constituted a grave violation of the proceedings prejudicial to the junior mortgage creditor, Gustavo Cabrera Rosaly.' "

In assigning this error it is erroneously stated in the brief that the deed of April 30 is of the year 1895, whereas it was executed in 1885.

When the Mortgage Law of 1893 established a summary proceeding for the foreclosure of mortgages, article 127 thereof prescribed that the mortgage shall state the value at which the contracting parties appraise the estate, in order that it may serve as a basis for the only public sale which may be made in the event that, the term of the loan having expired, it does not appear that the loan had been paid. Article 172 of the Regulations of the said Mortgage Law prescribes that when the valuation of the property agreed to in the instrument constituting the loan, whereunder the proceedings are being had, exceeds the amount of the preferred obligations secured by such property, the former shall be inserted in the notices as the upset price at the sale. Article 175 provides that creditors who have their rights recorded prior to the time the law goes into effect may select this summary procedure; but when the titles of their claims do not state the agreement of the debtor to a definite price for the auction, they must establish this agreement by means of a public instrument, or request a valuation, in accordance with the Law of Civil Procedure, in order to prepare the announcement of the sale.

The mortgages foreclosed by Saurí, Subirá & Company were created before the Mortgage Law of 1893 went into effect and although a valuation of the properties encumbered by the mortgages is specified therein, it is not stated that said valuation should serve as the upset price of the public sale to be made in case of foreclosure; therefore if they desired to follow the new summary procedure established by the Mortgage Law, they were required to exhibit an instrument expressing the agreement of the debtors to a valuation of the property in case of sale or move for a judicial appraisement, which last course was adopted by the foreclosing mortgagee. It was not sufficient that the properties were given

a valuation in the mortgage deed, but the instrument should have stated that the valuation was to serve as an upset price for the public sale, and this was not stated in the mortgage deeds.

The fourth assignment of error is as follows:

"The court erred in not holding that failure to post the notices of sale in the wards where the mortgaged properties were situated and failure to describe the said properties in such notices constituted a material defect in the foreclosure proceedings which brought about the cancellation of the junior mortgage of Gustavo Cabrera, and erred in finding the contrary in its statement of the case notwithstanding its findings of fact in harmony with the allegations of the amended complaint on these points."

Article 172 of the Regulations for the execution of the Mortgage Law requires that notices of sale shall be posted at the usual public places of the place where the proceedings are brought and of the place where the property is situated.

The notices of sale in these proceedings were posted on the doors of the clerk's office and of the Court of First Instance of the city of Ponce which, according to the evidence, were the usual public places for posting notices of sale of properties in proceedings brought in that court when the properties were situated in the municipality of Ponce, and it has not been proved or attempted to be proved that in the wards in which the properties were situated there was a public place where notices of sale of properties situated therein were usually posted.

Moreover, the law does not require the posting of notices of sale in the wards in which properties put up at auction are situated.

As regards the form in which the notices of sale were drawn up, although the boundaries of the properties and the wards in which they were situated were not specified therein, the names by which the properties were known, the names of their owners, the number of *cuerdas* of land composing them and their values, as well as the fact that the title deeds

were to be found in the office of Scrivener Schroder, were stated.

We agree with the judge of the lower court that such details were sufficient to give notice to any person interested in the purchase of the properties to be sold and placed at his disposal the necessary means of ascertaining the description of the properties and the wards wherein they were situated.

The errors assigned under numbers five and six may be considered together because they refer to defects in the notices of sale and their publication which the appellants allege to be grounds for the annulment of the judicial sale.

In said assignments the following defects are alleged: That it was stated in the notices of sale that no rights were recorded posterior to those of the foreclosing mortgagees; that the name of the junior creditor, Gustavo Cabrera, was omitted; and that the notices of sale were not published in the *Gazette* for twenty days, but only for fourteen days.

These facts are true but they do not invalidate the public sale.

The reason for giving the names of junior creditors in the notices of public sale is to notify them of the foreclosure proceeding when it had not been possible to serve them with the summons demanding payment according to subdivision 2 of article 172 of the Regulations for the execution of the Mortgage Law, as said in the case of Fernández & Company, *supra;* and as Gustavo Cabrera was notified personally and advised of the proceeding against the properties in which he had a junior recorded right, it was not necessary that his name should appear in the notices for the reason that the purpose of the law was already complied with.

Neither was the failure to mention in the notices the existence of the credit posterior to those sued for prejudicial to the father of the appellants, because the data contained therein were sufficient to put him on notice that the properties in question were the ones mortgaged to him, nor as re-

gards the bidders was the said omission prejudicial to Cabrera for it did not prevent attendance at the sale but perhaps favored it.

The most important point now under consideration is the failure to publish the notices in the *Gazette* for a period of twenty days.

On February 22, 1898, the judge ordered that the mortgaged property be sold at public auction, setting March 18 following, at 2 p. m., for the sale, and the notices announcing the same to the public, in which the place where the sale was to take place was also inserted, were posted on the doors of the court-house and of the clerk's office twenty-two days before the date set for the sale, but the notice published in the *Gazette* of this island appeared therein only fourteen days before the sale instead of twenty days, as prescribed by law.

In view of the foregoing the question to be decided in this case is whether a junior creditor may have the public sale annulled on this ground alone.

Failure to publish notices for the entire time required by law does not necessarily annul the sale inasmuch as this requirement may be waived by the debtor; and in order that a junior creditor may obtain a decree of nullity on that ground, we think it a general principle of law that he must show that he has been gravely injured. This principle is laid down in 27 Cyc., 1710.

In the present case there is no allegation or proof that by reason of the failure to publish one of the three notices of sale for the full twenty days bidders did not attend the sale; that for this reason the proceeds of the sale were not sufficient to cover the preferred credits as well as that of the plaintiffs, or that the properties were sold for less than their true value. A junior mortgage creditor has no other right to the mortgaged property than that to recover out of the difference between the senior mortgage credits and the actual and real value of the property. Judgment of the Supreme Court of Spain, 88 Jur. Civ., 70.

In view of the foregoing the court did not err, as alleged in the seventh assignment, in not sustaining the complaint upon all or some of the grounds set forth.

The judgment imposed the costs on the plaintiff-appellants together with the disbursements and attorney fees and this is assigned as error in the eighth ground of the appeal.

The law empowers the judges to impose discretionally the costs and disbursements of the action upon the defeated party, taking into account his degree of guilt or temerity, and also attorney fees in actions in which the subject-matter exceeds $500.

It has not been shown that the judge abused that discretion and, therefore, the said ground of appeal cannot be sustained. The case of *Torres et al.* v. *Rubianes et al.,* 20 P. R. R., 316, cited by the appellants, is not applicable, for as we reversed the judgment we applied the rule followed by the courts of not considering the element of temerity because the party had obtained a favorable judgment.

The transcript of the record also contains an appeal from the decision approving the memorandum of costs.

In said memorandum there is an item of $2,500 for attorney fees which the lower court reduced to $1,000 after hearing the evidence regarding the same, and we think that it did not abuse its authority in fixing the amount for attorney fees.

For the foregoing reasons the judgment and decision appealed from should be

*Affirmed.*

Chief Justice Hernández and Justices Wolf and del Toro concurred.

Mr. Justice Hutchison took no part in the decision of this case.